### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. DKC-05-0393** |
| **JORGE RIGOBERTO AMADOR and ROBERTO ANTONIO ARGUETA,** | : | |
| | : | |
| **Defendants.** | | |

...oOo...

### GOVERNMENT'S CONSOLIDATED RESPONSE TO
### DEFENDANT AMADOR'S NON-CAPITAL MOTIONS

The United States of America, by and through its attorneys, Rod J. Rosenstein, United States Attorney for the District of Maryland, and James M. Trusty and Robert K. Hur, Assistant United States Attorneys for said District, hereby files this Consolidated Response to Pretrial Motions filed by Defendant Amador in the above-referenced matter.  The defendant has filed motions to obtain a pre-trial determination of conspiracy, to dismiss counts based upon multiplicity, to compel notice of evidence subject to suppression, and to suppress statements.  For the reasons set forth below, the United States urges this Honorable Court to deny the motions.

**I.      DEFENDANT'S MOTION FOR PRETRIAL RULING ON FEDERAL RULE OF EVIDENCE 801(d)(2)(e) STATEMENTS OF CO-CONSPIRATORS**

Defendant Amador requests that this Court make a preliminary determination regarding the defendant's participation in a conspiracy before allowing the United States to present any co-conspirator statements under Federal Rule of Evidence 801(d)(2)(e).  The Fourth Circuit simply does not require a pretrial James-type hearing in these circumstances.[1]  Instead, the Fourth Circuit has held

---

[1]  This type of pretrial hearing is often called a "James" hearing, citing the Fifth Circuit's decision in United States v. James, 590 F.2d 575 (5th Cir.) (*en banc*), cert. denied, 442 U.S. 917 (1979).

that a trial judge "retains the option to admit conditionally the declarations of co-conspirators before the conspiracy has been independently established, subject to the subsequent fulfillment of that factual predicate." United States v. Hines, 717 F.2d 1481, 1488 (4th Cir. 1983). Accord United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir. 1987) ("the trial court, in its discretion, may admit such statements into evidence prior to proof of conspiracy, contingent upon a later showing of conspiracy by independent evidence"); United States v. Caudle, 758 F.2d 994, 998 (4th Cir. 1985) ("[T]his court has never required a pretrial determination of the existence of the conspiracy").   The co-conspirator exception applies as long as it was "more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made . . . ." United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977). This Court has followed that procedure on repeated occasions in the instant prosecution of MS-13 co-conspirators, and the United States urges the Court to continue on that well-trodden trail.

During the trial, the Court should receive co-conspirator statements conditionally, then rule at the close of the Government's case whether the Government has established the necessary factual predicate for admission of these statements. This procedure has been specifically endorsed by the Fourth Circuit. United States v. Blevins, 960 F. 2d 1252, 1256 (4th Cir. 1992); United States v. Hines, 717 F.2d 1481, 1488 (4th Cir. 1983). At the close of the Government's case, the Court can then hear argument from counsel on the admissibility of the co-conspirator statements. The Court may then make the factual findings required by the rule, i.e., whether the Government had established by a preponderance of the evidence: (1) that a conspiracy as charged in the indictment had existed; (2) that the defendant had been a member of the conspiracy; (3) that the various statements at issue were made during the course of the conspiracy; and (4) that the statements were made in furtherance of the conspiracy. See United States v. Lieberman, 637 F.2d 95, 102 (2d Cir. 1980). These findings

are subject to appellate review only for clear error.  United States v. Leavis, 853 F.2d 215, 220 (4th Cir. 1988).

It should also be noted that the "statements may also be admissible under other provisions of Rules 801-804.  For instance, statements made in furtherance of the conspiracy may be admissible under Rule 801(d)(2)(E), and other statements that bear circumstantial guarantees of trustworthiness may be admissible under Rule 804(b)(5), the catchall hearsay exception."  Williamson v. United States, 512 U.S. 594, 602 (1994).

In the instant prosecution, the Government has established beyond a reasonable doubt, to the satisfaction of four petit juries, the existence of the MS-13 racketeering conspiracy.  The Government is prepared to establish the existence of the MS-13 conspiracy yet again in defendant Amador's trial.  The Fourth Circuit has approved the procedure of permitting the trial court to determine, during the trial, if the Government has proven the existence of the conspiracy prior to the final admission of any evidence dependent on that finding.  Amador offers no authority for the Court to adopt any different procedure, contrary to Fourth Circuit case law, in the instant case.

This very issue has been previously litigated by co-defendants in this case.  Defendant Guillen put forth this argument and the Court rejected it on July 9, 2007.  Defendant Palacios similarly failed to establish a basis for a James hearing, and the Court denied his motion to dismiss the indictment on June 9, 2008.

It is quite clear that this Court need not make a pretrial determination about the existence of a conspiracy prior to making a decision about whether to admit co-conspirator statements pursuant to Rule 801(d)(2)(E).  Indeed, because of the obvious delay that would be caused by the procedure requested by the defendant, the Court should instead admit such statements into evidence on the condition that, at some point during the trial, the government provide sufficient evidence of the

existence of a conspiracy.  To do otherwise would be to essentially hold a "mini-trial" before the trial actually begins.  Accordingly, the Government respectfully requests that the Court deny Amador's motion for a pretrial evidentiary hearing to establish the existence of the racketeering conspiracy.

## II.     DEFENDANT'S MOTION FOR NOTICE BY THE GOVERNMENT OF THE INTENTION TO USE EVIDENCE ARGUABLY SUBJECT TO SUPPRESSION

Defendant Amador moves this Court to compel the government to disclose any evidence that it intends to use, either in its case-in-chief or "in rebuttal or otherwise,"[2] that may be subject to suppression by the defendant.  The government has provided Rule 16 discovery to all counsel already, and will continue to do so if additional Rule 16 materials, such as subpoenaed documents which the government intends to use at trial, are identified prior to trial.  Physical evidence has been made available to defense counsel for years, and as the government has obtained additional physical evidence, such as photographs, the United States has continued to provide copies to defense counsel. In fact, defense counsel has scheduled another review of the physical evidence on October 3, 2008. The government notes that all of the listed items are governed by the discovery agreement signed by counsel for Amador.    In short, there is simply no basis for invoking the Court's supervision over the discovery process at this time, and the United States respectfully submits that this Court should deny the Motion for Notice by the Government of the Intention to Use Evidence Arguably Subject to Suppression.

## III.    DEFENDANT'S MOTION TO DISMISS COUNT TWENTY-THREE FOR MULTIPLICITY

Counsel for defendant Amador has filed a motion to dismiss Count Twenty-Three of the Fourth Superseding Indictment as multiplicitous.  He cites an unpublished opinion authored by Judge

---

[2] To the extent that this motion attempts to obtain discovery pertaining to rebuttal or the penalty phase, the United States objects and contends that the motion is without precedent.

Andre Davis of this Court. <u>United States v. Gardner</u>, 417 F.Supp.2d 703 (2006). Defendant Argueta has filed a motion to adopt and/or confirm. Accordingly, the government will address the arguments made jointly below.

An indictment is multiplicitous if it charges the same offense in multiple counts. <u>United States v. Leftenant</u>, 341 F.3d 338, 347-48 (4th Cir. 2003) (holding multiplicitous an indictment charging six separate counts of possessing counterfeit currency because defendant possessed all items simultaneously on a single occasion). An indictment is not multiplicitous if each count requires proof of facts that the other counts do not. <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932); <u>United States v. Bailey</u>, 112 F.3d 758, 767 (4th Cir. 1997) (holding that indictment charging defendant with kidnaping wife as a form of domestic violence in separate counts was not multiplicitous because each count required proof of distinct facts).

Analysis of an indictment for multiplicity must begin with the language of the statutes charged. Defendant Amador has been charged with a conspiracy to commit murder in aid of racketeering (Count Twenty-Three) and murder in aid of racketeering (Count Twenty-Four), as well as the RICO conspiracy (Count One). Defendant Argueta is charged in the umbrella conspiracy (Count One) as well as with assault with a dangerous weapon in aid of racketeering (Counts Thirteen and Sixteen), conspiracy to commit murder in aid of racketeering (Count Fourteen), and murder in aid of racketeering (Count Fifteen).

In order to prove that defendants Amador and Argueta violated 18 U.S.C. § 1959(a)(5)) by conspiring to commit murder in aid of racketeering, the government must establish each of the following elements beyond a reasonable doubt:

(1) Two or more persons entered the unlawful agreement to murder as set forth in the indictment; (2) the defendant knowingly became a member of the conspiracy; and (3) the defendants conspired to commit the murder either for the purpose of gaining entrance to an

enterprise engaged in racketeering activity or for maintaining or increasing position in an enterprise engaged in racketeering activity.

L. Sand & J. Siffert, Modern Federal Jury Instructions, No. 19-3 (modified).

In order to prove that the defendants violated 18 U.S.C. § 1962(d) by conspiring to participate in a racketeering enterprise, as charged in Count One, the government must prove the following:

(1) Two or more people agreed to commit a substantive RICO offense; and (2) the defendant knew of and agreed to the overall objective of the RICO offense.

United States v. Abed, 203 F.3d 822 (4th Cir. 2000) (unpublished opinion) (citing United States v. Posada-Rios, 158 F.3d 832, 857 (5th Cir. 1998)). In other words, to sustain a RICO conspiracy conviction, the government need only prove that the defendant knew before or during his membership in the RICO conspiracy that a co-conspirator would commit at least two racketeering acts.

Application of the Blockburger test to the elements of these two discrete offenses demonstrates that each count requires proof of facts that the other does not. The RICO conspiracy count (i.e., Count One) charges a conspiracy by persons known and unknown to the grand jury to engage in a pattern of racketeering over a period of six years. By contrast, each VICAR conspiracy count—Count Twenty-Three for defendant Amador, and Count Fourteen for defendant Argueta—charges an agreement by specified others to commit one particular murder on a particular day. The RICO conspiracy statute, 18 U.S.C. § 1962(d), does not require that a defendant commit even one predicate act (including the conspiracy to commit murder) in order to be found guilty. Rather, this statute requires only that, as Count One charges, "each defendant agreed that a conspirator would commit at least two acts of racketeering activity." Moreover, those two acts need not include any of the conspiracies to commit murder charged in the VICAR counts. Furthermore, committing

the conspiracy to commit murder alone would not, for multiple reasons, mean the defendant is automatically guilty of Count One.

First, the RICO conspiracy charged in Count One requires that "each defendant agreed that a conspirator would commit at least two acts of racketeering activity," not just the one predicate act that parallels the VICAR conspiracies charged in Counts Twenty-Three and Fourteen. Even though the offense charged in the VICAR conspiracy count against each defendant may qualify as one of the two racketeering acts charged in the RICO conspiracy charged in Count One, that offense cannot fulfill both of them. Therefore, proof of Count One requires an additional fact not required to prove Count Twenty-Three or Count Fourteen.

Second, each VICAR conspiracy charge requires a showing that the defendant conspired to commit the murder (or assault) "for the purpose of gaining entrance to an enterprise engaged in racketeering activity or for maintaining or increasing position in an enterprise engaged in racketeering activity." This requires a showing of the defendant's personal motivation that is wholly absent from Count One.

With regard to Counts Thirteen and Sixteen, which charge defendant Argueta with conspiring to commit assaults with dangerous weapons in aid of a racketeering enterprise, the differences between this statute (18 U.S.C. § 1959(a)) and the RICO conspiracy statute (18 U.S.C. § 1962(d)) are also apparent. Counts Thirteen and Sixteen each require the defendant to have conspired to commit assaults (which are not predicate acts of a racketeering enterprise) in order to maintain or increase position in an enterprise that is engaged in racketeering activity. The assaults themselves are not even an element of a racketeering enterprise because assaultive activity that does not "involve murder" or a violation of a designated federal statute does not fall within the definition set forth in Section 1961(1) of "racketeering activity." In other words, one could find a defendant guilty of

7

Count Thirteen or Count Sixteen for conspiring to commit assaults with dangerous weapons for a racketeering enterprise and not convict him of RICO conspiracy if the jury finds the defendant did not agree with at least one other that a person would participate in the enterprise through a pattern of racketeering activity.

In their motion, the defendants raise nothing new but simply rely on Judge Davis's opinion in Gardner. The bottom line is that Judge Davis held—incorrectly, in the Government's view—that any conspiracy charged as a Violent Crime in Aid of Racketeering (VICAR) is necessarily multiplicitous with a Racketeering Conspiracy in violation of 18 U.S.C. Section 1962(d). Judge Davis based his ruling on the finding that the statutes are not "sufficiently distinguishable" from each other so that it is reasonable to infer that Congress intended multiple punishments. Though it does appear to be the first published opinion on the subject, the government respectfully submits that Judge Davis is simply wrong on this issue. Perhaps due to the underlying proposition being a simple one, there is an absence of case law in this area.

For this last point, consider, for example, the Third Circuit's opinion in United States v. Merlino, 310 F.3d 137 (3d Cir. 2002), affirming the denial of the defendant's motion to dismiss the indictment. The defendant was accused of violating 18 U.S.C. §§ 1962(c) and (d) by committing twenty-one racketeering acts, including the murder of Joseph Sodano. Despite the defendant's conviction on a number of racketeering acts, the jury indicated on a special verdict sheet that his participation in Sodano's murder was "Not Proven." The defendant argued that the jury had unanimously acquitted him of the Sodano murder by checking the box marked "Not Proven" that corresponded to that racketeering act. However, the jury's specific finding as to this murder was unclear because the district court's instructions permitted the jury to violate its unanimity instruction. After receiving the jury's verdict, the government indicted the defendant for Sodano's murder in

8

violation of Section 1959(a)(1).  The Court explicitly held that, because the VICAR offense required proof of an element that the RICO offense did not, and vice versa, they were different offenses for the purposes of the Double Jeopardy Clause.  Id. at 141, citing Blockburger, 284 U.S. 299 (1932).

For the reasons stated above, VICAR conspiracies and RICO conspiracies differ because they require proof of different facts.  Judge Davis nonetheless tried to conjoin the two statutes, suggesting even that Congress did not intend for multiple punishments for defendants found guilty of both offenses.  This proposition of congressional intent is also contrary to law.  Consider, for example, United States v. Marino, 277 F.3d 11 (1st Cir. 2002).  In Marino, the First Circuit rejected the defendants' argument that a VICAR violation—conspiracy to murder thirteen individuals—was a lesser included offense of the substantive RICO violation.  The panel noted that many courts have concluded that the Double Jeopardy Clause allows for separate punishments for a substantive RICO violation as well as its predicate acts.  See United States v . Greenleaf, 692 F.2d 182, 189 (1st Cir. 1982); United States v. Coonan, 938 F.2d 1553, 1566 (2d Cir. 1991); United States v. Beale, 921 F.2d 1412, 1437 (11th Cir. 1991); United States v. Kragness, 830 F.2d 842, 864 (8th Cir. 1987); United States v. Hawkins, 658 F.2d 279, 287 (5th Cir. 1981).

Similarly, in United States v. Polanco, 145 F.3d 536 (2d Cir. 1998), the court affirmed the defendant's sentence imposed by the district court on the "Polanco Enterprise" counts despite the defendant's contention that receiving consecutive sentences for his RICO conviction under 18 U.S.C. § 1962(c) and for his convictions under 18 U.S.C. § 1959 for murdering and attempting to murder Polanco Enterprise rivals for the purpose of maintaining or increasing his position in the Polanco Enterprise, which were also charged as predicate acts in the RICO count, violated the Double Jeopardy Clause.  The Second Circuit disagreed, stating that it is well settled that Congress sought to permit cumulative sentences for a RICO conviction and the predicate offenses upon which the

RICO violation is premised.  Moreover, the Second Circuit had already held that the government may prosecute a defendant both under RICO for engaging in a pattern of racketeering activity and also under Section 1959 for violent crimes intended to maintain or increase the defendant's position in the RICO enterprise.   The court cited cases holding that, where Congress makes sufficiently clear its intention to impose multiple punishments for the same act, imposition of such punishment is constitutional.  145 F.3d at 542-543.

Accordingly, Judge Davis' opinion notwithstanding, there is simply nothing multiplicitous about the RICO and VICAR conspiracy charges in the Fourth Superseding Indictment.  Nor did Congress attempt to limit the punishment for those who would be convicted of a VICAR conspiracy and a RICO conspiracy.  For these reasons, defendant Amador's motion to dismiss Count Twenty-Three of the Fourth Superseding Indictment should be denied.

## IV.   DEFENDANT'S MOTION TO SUPPRESS ALL STATEMENTS AND EVIDENCE WHICH FLOWED THEREFROM

Defendant Amador moves to suppress any statement of the defendant taken by law enforcement officers on March 30, 2005.  As a basis for this suppression, the defendant simply points out that the government must show a statement is voluntary and Miranda-compliant.[3]  Regardless of the circumstances of the police contact with Amador on March 30, 2005, the fact that he was an illegal alien who had previously been deported for an aggravated felony is not subject to dispute.  In fact, Amador was convicted of this federal offense (case number AW-05-176) stemming from law enforcement contact with him on that same day.  Thus, law enforcement had legitimate grounds to detain and fully identify Mr. Amador, who was providing conflicting information as to his identity.

---

[3] The United States has previously filed motions responses in this case that discuss the law regarding admissibility of statements vis--à--vis Miranda.

10

The fact that officers elicited from defendant Amador that his nickname was "Santo Diablo" fits squarely within the booking exception to Miranda applicability and is therefore admissible. Obtaining basic information from a suspect, such as name, address, and date of birth, has long been considered the type of routine fact-gathering that is exempt from the need for Miranda waiver because it does not constitute "interrogation" as that term applies to Miranda applicability. Rhode Island v. Innis, 446 U.S. 291 (1980). Questions regarding a suspect's use of a nickname fit within that classification of identifying information that should not be subject to Miranda-based suppression.

In United States v. Fenner, 1994 WL 637257 (unpublished opinion attached as Attachment A), the Fourth Circuit held that the pre-Miranda elicitation of a nickname (in that case, "Skip," which linked the defendant to a search location where drugs and firearm evidence were recovered) fits within the booking exception. Fenner, at *3. The United States respectfully urges this Court to find similarly that the fact that Amador acknowledged use of the nickname "Santo Diablo" is admissible in this prosecution.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

James M. Trusty
Robert K. Hur
Assistant United States Attorneys
United States Courthouse
Suite 400
6500 Cherrywood Lane
Greenbelt, Maryland 20770-1249
301/344-4433

**CERTIFICATE OF SERVICE**

This is to certify that on this 29th day of September, 2008, copies of the foregoing GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT AMADOR'S NON-CAPITAL MOTIONS, were mailed postage prepaid to the following:

Arcangelo Tuminelli, Esq.                     Teresa Whalen, Esq.
1005 N. Calvert Street                          801 Wayne Avenue, Suite 400
Baltimore, MD 21201                           Silver Spring, MD 20910

Joseph McCarthy, Esq.                          Laura Kelsey Rhodes, Esq.
510 King St., Ste 400                           200-A Monroe St., Ste 305
Alexandria, VA 22314                          Rockville, MD 20850

James M. Trusty
Assistant United States Attorney